FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ DEC 31 2014 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
YOUNG SHIN,

      Plaintiff,

 -against-            **MEMORANDUM AND ORDER**

QUEENS HOSPITAL CENTER IN JAMAICA  14-CV-7237 (SLT)(LB)
(NYC Health & Hospital Corp) and NYC,

      Defendants.
------------------------------------------------------------x

**TOWNES, United States District Judge:**

  Plaintiff Young Shin ("Plaintiff"), appearing *pro se,* brings this action against Queens Hospital Center—a public hospital operated by the New York City Health & Hospitals Corporation—and the City of New York (collectively, "Defendants"), principally alleging that she was wrongly involuntarily committed to the hospital. Although Plaintiff paid the requisite filing fee to commence this action, Plaintiff's Complaint fails to state a claim which could serve as a basis for federal-question jurisdiction. Accordingly, this action is dismissed for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

## BACKGROUND

  This is the second of two actions brought in this Court by Plaintiff within the past six months. In the first action—*Shin v. Okin Development LLC*, No. 14-CV-4133 (SLT)—Plaintiff sued her ex-landlord, principally alleging that the landlord exposed her to poison gas and mold from July 1, 2011, to May 15, 2012, when she occupied a basement apartment on Barclay Avenue in Flushing, Queens. In a memorandum and order dated July 14, 2014, this Court dismissed that action for lack of subject-matter jurisdiction.

On December 11, 2014, Plaintiff commenced this fee-paid action by filing a five-page complaint accompanied by approximately 200 pages of exhibits. The complaint is unclear. The first page of the complaint contains a series of disjointed phrases and sentences written on a form complaint, while the remaining four pages contain a disjointed narrative. However, when read in conjunction with the exhibits, the complaint appears to allege the following facts.

In the early morning of December 4, 2011, Plaintiff was transported by ambulance from her Barclay Avenue apartment to the emergency room of the Queens Hospital Center in Jamaica, New York (Complaint, p. 1).[1] Although it is unclear who called the ambulance, Plaintiff states that she only wanted to have the hospital check her for "toxines [*sic*] such as gases and CO" (presumably, carbon monoxide) and to perform "detoxification" (*Id.*, p. 3). Hospital staff, however, apparently believed that Plaintiff "[b]rought herself in thinking [her] landlord wants to kill her" (*Id.*, Ex. 4).

At some point on December 4, 2011, Plaintiff was examined by an emergency room physician who decided to admit Plaintiff to the hospital as an emergency-status patient pursuant to the Comprehensive Psychiatric Emergency Program ("C.P.E.P."). In accordance with sections 9.39 and 9.40 of the New York Mental Hygiene Law, Plaintiff was given two notices. The first, a document entitled "Notice of Status and Rights C.P.E.P. Emergency Admission" (the "Notice"), informed Plaintiff that she was being admitted "for immediate observation, care and treatment." (*Id.*, Ex. 8). That Notice further informed Plaintiff that she had "a right to a court hearing" and that Mental Hygiene Legal Services ("MHLS") could provide her "with protective

---

[1] Although the complaint consists of five handwritten pages, Plaintiff renumbered the last two pages by crossing out the 4 and 5, and substituting 5 and 6. To avoid confusion, the Court will use the page numbers assigned by Plaintiff.

2

legal services, advice and assistance, including representation, with regard to [her] hospitalization." (*Id*). The Notice also provided an address and telephone number for MHLS, and indicated that a copy of the Notice was being sent to MHLS. (*Id.*).

The second notice, entitled "Notice of Status and Rights Emergency Admission" (the "Second Notice"), was similar to the first but provided additional details. It stated that Plaintiff was alleged to have a "mental illness ... likely to result in serious harm" to herself or others and that if Plaintiff believed that she did "not need immediate observation, care and treatment," she could "make a written request for a court hearing that will take place as soon as possible, and in any event, within five days after the request is received by the hospital." (*Id.*, Ex. 9). The Second Notice also stated that Plaintiff would be evaluated by a member of the psychiatric staff within 48 hours of her admission to the hospital, and could be retained for up to 15 days if the second physician agreed with the first physician's findings.

Exhibit 5 to the Complaint suggests that Plaintiff was evaluated by a second doctor on December 6, 2011. That doctor apparently diagnosed Plaintiff as a paranoid schizophrenic, but did not believe that Plaintiff needed to be hospitalized. (*Id.*, Ex. 5). Plaintiff was released from the hospital that same day. (*Id.*, Ex. 10).

On March 2, 2012, Plaintiff filed a Notice of Claim with the City of New York, accusing the Queens Hospital Center of unspecified "civil rights violations" and "medical malpractice." (*Id.*, Ex. 24-B). Although Plaintiff's complaint does not allege that the City denied Plaintiff's claim, it attaches exhibits which indicate that Plaintiff filed an action against the Queens Hospital Center and the City of New York in the Supreme Court of the State of New York, Queens County, on March 5, 2013. (*Id.*, Exs. 25 & 26). Plaintiff was denied permission to proceed as

3

poor person in that action, and it is unclear whether Plaintiff subsequently paid the Index Number fee necessary to continue that action. (*Id.*, Ex. 26).

*The Instant Action*

On December 11, 2014, Plaintiff sued the Queens Hospital Center and the City of New York in this Court, principally alleging that she was wrongly committed. Plaintiff alleges, *inter alia*, that she was a "false mental illness victim," having been hospitalized by virtue of a "false accusation of someone," such as her "ex-landlords," who made "wrong reports ... to cover up their crimes." (*Id.*, p. 3). Plaintiff does not allege that she ever requested a hearing to challenge her retention by the hospital, but notes that she was released without ever seeing a judge. (*Id.*, p. 1).

Plaintiff's complaint also alludes to "Malpractice" (*id.*) and "discrimination of [*sic*] the minority & the poor." (*Id.*, p. 5). The complaint does not elaborate on the malpractice claim, but implies that the staff physician was mistaken by stating, "I was not dangerous at all for myself and others." (*Id.*, p. 3). However, the pleading does not allege any facts to suggest that the staff physician or anyone else affiliated with defendants acted because of some discriminatory animus. Indeed, although it is clear from the exhibits to the complaint that plaintiff is Korean, the complaint itself contains no allegations concerning Plaintiff's race or national origin.

Plaintiff principally seeks compensatory and punitive damages of "over $75,000." (*Id.*, p. 5). Plaintiff also (1) asks to be "cleaned of [her] medical records in Queens Mental Hospital" and (2) requests that her "ex-landlord and relative persons" be punished. (*Id.*, p. 6).

4

## DISCUSSION

### *Legal Standard*

Title 28, Section 1915(e)(2)(B), of the United States Code provides that, "[n]otwithstanding any filing fee ... that may have been paid, the court shall dismiss the case at any time if the court determines that ... (B) the action (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2) (brackets and ellipsis added). In addition, federal courts have an independent obligation to examine the basis of their jurisdiction. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990). If a court "determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

A document filed *pro se* is to be liberally construed, and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). A court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 878, 790 (2d Cir. 1994)). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," the court must grant leave to amend the complaint. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999).

*Subject-matter Jurisdiction*

Federal courts are courts of limited jurisdiction and may not preside over cases if they lack subject-matter jurisdiction. *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700-01 (2d Cir. 2000).

> The basic statutory grants of federal-court subject-matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332. Section 1331 provides for "[f]ederal-question" jurisdiction, § 1332 for "[d]iversity of citizenship" jurisdiction. A plaintiff properly invokes § 1331 jurisdiction when she pleads a colorable claim "arising under" the Constitution or laws of the United States. She invokes jurisdiction under § 1332 when she presents a claim between parties of diverse citizenship that exceeds the required jurisdictional amount, currently $75,000.

*Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006) (internal citations omitted; brackets in original). "The party invoking federal jurisdiction bears the burden of establishing that jurisdiction exists." *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009) (quoting *Sharkey v. Quarantillo*, 541 F.3d 75, 82 (2d Cir. 2008)) (internal quotation marks omitted).

Although Plaintiff's complaint specifically alleges damages in excess of $75,000, Complaint, p. 5, other allegations in the complaint establish that there is no basis for diversity jurisdiction. The complaint specifically alleges that Plaintiff resides in Flushing, New York, and both defendants are New York entities. *Id.*, p. 1. "In the absence of diversity of citizenship, it is essential to jurisdiction that a substantial federal question should be presented." *Hagans v. Lavine*, 415 U.S. 528, 537 (1974) (quoting *Ex parte Poresky*, 290 U.S. 30, 31-32 (1933)). Accordingly, this Court must determine whether the complaint, liberally construed, suggests a basis for federal-question jurisdiction.

The complaint does not specifically mention any Constitutional or federal statutory provisions. However it alleges that Plaintiff's involuntary commitment violated a "human right," Complaint, p. 1, and alludes to "Malpractice," *id.*, and "discrimination of [*sic*] the minority and poor." *Id.*, p. 4. Construed liberally, these allegations and allusions can be construed as attempts to allege a civil rights claim, a malpractice claim, and a discrimination claim. However, for the reasons set forth below, this Court concludes that Plaintiff's complaint fails to state a civil rights claim or a discrimination claim, and that a medical malpractice claim does not create a basis for federal subject-matter jurisdiction.

### *The Civil Rights Claim*

Although the complaint does not mention 42 U.S.C. § 1983 or the phrase "civil rights," the Court liberally construes Plaintiff's pleading as attempting to allege a civil rights violation under 42 U.S.C. § 1983. Section 1983 itself "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993), *cert. denied*, 512 U.S. 1240 (1994). In order to maintain a § 1983 action, a plaintiff must allege both that the conduct complained of was "committed by a person acting under color of state law" and "deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994). Since the Queens Hospital Center and City of New York are state actors, *see, e.g., Nedd v. Queens Hosp. Ctr.*, 08-CV-1141 (DLI)(LB), 2008 WL 2497428, at *2 (E.D.N.Y. June 18, 2008) ("The Queens Hospital Center is a public hospital, and its employees would be considered state actors."); *VanBrocklen v. Gupta*, No. 09-CV-00897(A)(M), 2012 WL 7801682, at *3 (W.D.N.Y. Sept. 20, 2012) (a public hospital is a state actor), the Court need only consider

the question of whether the facts alleged in Plaintiff's complaint, construed liberally, suggest a violation of the federal Constitution or a federal law.

The Fourteenth Amendment of the United States Constitution prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law ...." U.S. Const. amend. XIV, § 1. "In general, 'the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property.'" *New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 115 (2d Cir. 2006) (quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1990)) (emphasis in *Zinermon*); *see also Gudema v. Nassau County*, 163 F.3d 717, 724 (2d Cir. 1998) ("Ordinarily, the Due Process Clause requires that the state not deprive an individual of a significant liberty or property interest without affording notice and some opportunity to be heard prior to the deprivation."). However, "in emergency situations a state may satisfy the requirements of procedural due process merely by making available 'some meaningful means by which to assess the propriety of the State's action at some time after the initial taking.'" *WWBITV, Inc. v. Village of Rouses Point*, 589 F.3d 46, 50 (2d Cir. 2009) (quoting *Parratt v. Taylor*, 451 U.S. 527, 539 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986)). "Where there is an emergency requiring quick action and where meaningful pre-deprivation process would be impractical, the government is relieved of its usual obligation to provide a hearing, as long as there is an adequate procedure in place to assess the propriety of the deprivation afterwards." *Id.*

In this case, the Queens Hospital Center's records indicate that Plaintiff was involuntarily committed on an emergency basis pursuant to sections 9.39 and 9.40 of the New York Mental Hygiene Law. Section 9.39(a) provides that "[t]he director of any hospital maintaining adequate

staff and facilities for the observation, examination, care, and treatment of persons alleged to be mentally ill and approved by the commissioner to receive and retain patients pursuant to this section may receive and retain therein as a patient for a period of fifteen days any person alleged to have a mental illness for which immediate observation, care, and treatment in a hospital is appropriate and which is likely to result in serious harm to himself or others." This section also provides, however, that the director can involuntarily commit a patient "only if a staff physician of the hospital upon examination of such person finds that such person qualifies under the requirements of this section" and, even then, cannot retain a patient for more than 48 hours "unless within such period such finding is confirmed after examination by another physician who shall be a member of the psychiatric staff of the hospital."

Because it contemplates a psychiatric emergency, section 9.39 does not provide for a pre-deprivation hearing. Rather, it prescribes a detailed procedure through which the involuntarily committed patient can obtain post-deprivation due process. Specifically, section 9.39 requires that:

> Such person ... be served, at the time of admission, with written notice of his status and rights as a patient under this section. ... At the same time, such notice shall also be given to the mental hygiene legal service and personally or by mail to such person or persons, not to exceed three in number, as may be designated in writing to receive such notice by the person alleged to be mentally ill. If at any time after admission, the patient, any relative, friend, or the mental hygiene legal service gives notice to the director in writing of request for court hearing on the question of need for immediate observation, care, and treatment, a hearing shall be held as herein provided as soon as practicable but in any event not more than five days after such request is received ....

N.Y. Mental Hyg. Law § 9.39(a) (ellipses added).

9

The provisions of section 9.40 of the New York Mental Hygiene Law are, in many respects, similar to the provisions of section 9.39. Section 9.40(a) provides that "[t]he director of any comprehensive psychiatric emergency program may receive and retain therein for a period not to exceed seventy-two hours, any person alleged to have a mental illness for which immediate observation, care and treatment in such program is appropriate and which is likely to result in serious harm to the person or others." Like section 9.39, section 9.40 provides that a person who is admitted to an extended observation bed must be "served with written notice of his status and rights as a patient under this section." N.Y. Mental Hyg. Law § 9.40(c). Section 9.40(c) further provides that "[w]ritten requests for court hearings on the question of need for immediate observation, care and treatment shall be made, and court hearings shall be scheduled and held, in the manner provided pursuant to subdivision (a) of section 9.39 ...."

Exhibits attached to Plaintiff's complaint in this case attest to the fact that Plaintiff was provided with the notices required by sections 9.39 and 9.40. *See* Complaint, Exs. 8 & 9. These attestations are corroborated by the fact that Plaintiff had the notices at the time she drafted her complaint. Indeed, Plaintiff does not allege that she did not receive the notices or that she requested a hearing. Furthermore, even assuming, *arguendo*, that she requested a hearing, Plaintiff was released two days after she was admitted to the hospital—three days before the hearing was required to take place. These facts, taken together, indicate that Plaintiff does not have a viable due process claim.

*Malpractice*

Plaintiff's complaint also alleges "malpractice." Complaint, p. 1. The pleading does not elaborate on this claim, but alleges that Plaintiff "was not dangerous at all for [her]self and others" at the time of her admission to the hospital. *Id.*, p. 3. The complaint further alleges that a nursing record reflects that Plaintiff exhibited "oriented thought as normal person." *Id.* These allegations, taken together, suggest that the staff physician who admitted Plaintiff committed medical malpractice by ignoring the nursing record and finding that Plaintiff presented a danger to herself and/or others.

Even if the allegations were sufficient to state a medical malpractice claim, such a claim would not establish a basis for federal-question jurisdiction. "Plaintiff's allegations of medical malpractice and negligence are state law claims that would not ordinarily come within the jurisdiction of the federal courts." *Ochei v. Nassau County Sup. Ct.*, No. 11-CV-5665 (JFB)(ETB), 2012 WL 159620, at *2 (E.D.N.Y. Jan. 13, 2012). "Allegations of medical malpractice ... will not suffice to support an action under 42 U.S.C. § 1983." *Owens v. Bellevue Hosp. Ctr.*, No. 95-9016, 1996 WL 134227, at *1 (2d Cir. Mar. 25, 1996) (summary order).

*Discrimination*

Although exhibits to the complaint indicate that Plaintiff is of Korean descent and her complaint alludes to "discrimination of [*sic*] the minority and poor," Complaint, p. 4, her pleading does not allege facts that suggest discrimination. To state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009). *Pro se* complaints, like other pleadings, must contain sufficient factual allegations to meet the plausibility standard. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

In evaluating whether a pleading states a claim for relief, "'a court must accept as true all factual allegations contained in a complaint' but need not accept 'legal conclusions.'" *Halebian v. Berv*, 590 F.3d 195, 203 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," and to nudge a plaintiff's claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.

In her complaint in this case, Plaintiff does not allege any facts that suggest race or national origin discrimination. Indeed, while documents attached as exhibits to the complaint make clear that plaintiff is of Korean descent, Plaintiff does not allege that fact in her handwritten complaint. Plaintiff also does not allege that Defendants' actions were motivated by her race or national origin. To the contrary, she theorizes that the staff physician was misled by a "false accusation by someone" such as her ex-landlord. Complaint, p. 3.

*Other Claims*

The remedy section of Plaintiff's complaint seeks to have Plaintiff's "ex-landlord and relative persons" punished. Complaint, p. 6. This Court cannot grant such relief because this is a civil, not a criminal, case. Moreover, the Court lacks the power to initiate a prosecution. "[C]riminal prosecutions are within the exclusive province of the public prosecutor, who has complete discretion over the decision to initiate, continue or cease prosecution." *Solomon v. H.P. Action Center, H.P.D.*, No. 99 Civ. 10352 (JSR), 1999 WL 1051092, at *1 (S.D.N.Y. Nov. 19, 1999). Furthermore, "[a] private citizen does not have a constitutional right to ... compel the

initiation of criminal proceedings." *Lis v. Leahy*, No. CIV-90-834E, 1991 WL 99060 at *1 (W.D.N.Y. June 3, 1991); *see also Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another").

In the remedy section of her complaint, Plaintiff also asks to be "cleaned of [her] medical records in Queens Mental Hospital." Complaint, p. 5. To the extent that Plaintiff is seeking to review and challenge the accuracy of materials contained in her medical records, Plaintiff must follow the procedures set forth in New York Mental Hygiene Law § 33.16(g). If Plaintiff wishes to have her medical records sealed, she must commence a special proceeding in the Supreme Court of the State of New York, Queens County, pursuant to New York Mental Hygiene Law § 33.14.

## *CONCLUSION*

For the reasons set forth above, Plaintiff's complaint fails to state a claim which could serve as a basis for federal-question jurisdiction. Accordingly, this action is dismissed for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(h)(3). Any state-law claims, such as the medical malpractice claim or requests that medical records be sealed, are dismissed without prejudice to re-filing them in State Court. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

/s/ Sandra L. Townes

SANDRA L. TOWNES
United States District Judge

Dated: December 29, 2014
      Brooklyn, New York